<u>Vawter v. ReconTrust Company, N.A. et al.</u>
Case No. 2:11-cv-01916-GMS


**INDEX TO EXHIBITS to
MOTION TO DISMISS**


**Exhibit A**         **Deed of Trust**

**Exhibit B**         **Corporation Assignment of Deed of Trust Arizona**

**Exhibit C**         **Substitution of Trustee Arizona**

**Exhibit D**         **Notice of Trustee's Sale Arizona**

# Exhibit A

Unofficial
Document

After Recording Return To:
COUNTRYWIDE HOME LOANS,
INC.
MS SV-79 DOCUMENT
PROCESSING
P.O.Box 10423
Van Nuys
CA 91410-0423

Prepared By:
KATIE PARISH

OLOAZGO450Y,

——————————— [Space Above This Line For Recording Data] ———————————

00012617311702006
[Doc ID #]

# DEED OF TRUST
MIN 1000157-0006371846-0

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   FEBRUARY 14, 2006   .
together with all Riders to this document.
**(B) "Borrower"** is
JULIE VAWTER, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument. Borrower's mailing address is
20145 EAST HAPPY ROAD
QUEEN CREEK, AZ 85242
**(C) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of  NEW YORK

**ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 11

VMP ⑥-6A(AZ) (0206)      CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291          Form 3003  1/01 (rev. 6/02)
CONV/VA



* 2 3 9 9 1 *                          * 1 2 6 1 7 3 1 1 7 0 0 0 0 0 0 2 0 0 6 A *

20060292746

DOC ID #: 00012617311702006

Lender's mailing address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613
**(D) "Trustee"** is
FIDELITY NATIONAL TITLE INSURANCE COMPANY

Trustee's mailing address is
15661 REDHILL AVENUE #200
TUSTIN, CA 92780
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated    FEBRUARY 14, 2006
The Note states that Borrower owes Lender
ONE HUNDRED SIXTY FOUR THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 164,500.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    MARCH 01, 2036                .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the

DOC ID #: 00012617311702006

repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                    COUNTY                    of

[Type of Recording Jurisdiction]

MARICOPA                                    :

[Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.  WHICH IS ATTACHED AND AFFIXED TO THE LAND AND IS PART OF THE REAL PROPERTY.  MANUFACTURER: CAVCO SKYLINE HOMES YEAR: 1988 SERIAL NO: 2073-0171-XA/B-R/C MODEL:  UNK HUD LABEL NO: CAL 349833/349834/350612 LENGH X WIDTH:  24' X 64' 10' X 52'

Parcel ID Number:                                                          which currently has the address of

20145 E HAPPY RD, QUEEN CREEK

[Street/City]

Arizona 85242-8444 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return

20060292746

DOC ID #: 0001261731170006

them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, ~~furnish~~ h to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

20060292746

DOC ID #: 00012617311702006

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount

20060292746

DOC ID #: 0001261731702006

not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

   **8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

   **9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy proceeding, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

   Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

   **10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes

20060292746

DOC ID #: 0001261731170 2006

available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest

20060292746

DOC ID #: 00012617311702006

in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any

20060292746

DOC ID #: 0001261731702006

provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b)

DOC ID #: 00012617311702006

"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without fur[ther demand] and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

20060292746

DOC ID #: 00012617311702006

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Julie Vawter_ _____ (Seal)
JULIE VAWTER                                    -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

_____ (Seal)
                                                -Borrower

Unofficial Document

STATE OF ARIZONA,                    _maricopa_      County ss:

The foregoing instrument was acknowledged before me this _14 day of February 2006_
by _____
_____
_____
_____

My Commission Expires:
_9/15/09_

_Barbara Anne Pullman_
Notary Public



OFFICIAL SEAL
BARBARA ANNE PULLMAN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 15, 2009

————————————[Space Above This Line For Recording Data]————————————

# INTEREST ONLY ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
KATIE PARISH

Unofficial Document

126173117
[Loan #]

THIS INTEREST ONLY ADJUSTABLE RATE RIDER is made this FOURTEENTH           day of
FEBRUARY, 2006    , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the
undersigned (the "Borrower") to secure Borrower's Note to
COUNTRYWIDE HOME LOANS, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
20145 E HAPPY RD
QUEEN CREEK, AZ 85242-8444
[Property Address]


**MULTISTATE INTEREST ONLY ADJUSTABLE RATE RIDER - LIBOR INDEX**
● BC - Interest Only ARM Rider                                    Initials: 
2E121-XX (02/04)(d)                         Page 1 of 3



* 2 3 9 9 1 *                    * 1 2 6 1 7 3 1 1 7 0 0 0 0 0 2 E 1 2 1 *

20060292746

LOAN #: 126173117

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of      8.875 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the   first                day of MARCH, 2008                , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE                              percentage point(s) (     5.000 %) to the Current Index. The Note Holder will then round the result of this calculation to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     10.375 % or less than     8.875 %. Thereafter, my interest rate will never be increased or decreased on any Change Date by more than single ONE & ONE-HALF                percentage point(s) (    1.500 %) from the rate of interest. I have been paying for the preceding six months. My interest rate will never be greater than     15.875 % or less than     8.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on the Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

Initials

● BC - Interest Only ARM Rider
2E121-XX (02/04)                    Page 2 of 3

LOAN #: 126173117

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Interest Only Adjustable Rate Rider.

_____ (Seal)
JULIE VAWTER                                                  - Borrower

Unofficial Document

_____ (Seal)
                                                             - Borrower

_____ (Seal)
                                                             - Borrower

_____ (Seal)
                                                             - Borrower

● BC - Interest Only ARM Rider
2E121-XX (02/04)                    Page 3 of 3

20060292746

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423


Prepared By:
KATIE PARISH


Unofficial Document                     126173117
                                        [Loan #]

# MANUFACTURED HOME LIMITED POWER OF ATTORNEY

The undersigned borrower(s), whether one or more, each referred to below as "I" or "me," residing at

_20145 E Happy Rd_ , _Queen Creek_
    Street Address                        City

_Az_ , _85242-8444_ _Maricopa_ ("Present address").
State          Zip            County

Buyer/Owner of the following manufactured home:

_Used_ _1988_ _Cavco Skyline Homes_
New/Used          Year                         Manufacturer's Name

_Unk_ _2073-0171-XA/B-R/C_ _24'x64'_
                                                        _10'x52'_
Model Name/Model No.          Manufacturer's Serial No.          Length/Width

- Manufactured Home Limited Power of Attorney
1E226-US CHL (05/05)(d)                  Page 1 of 4

*23991*                    *126173117000001E226*

LOAN #: 126173117

permanently affixed to the real property located at

20145 E HAPPY RD
QUEEN CREEK, AZ 85242-8444
("Property Address")

and as more particularly described on Exhibit A attached hereto (the "Real Property"), **does hereby irrevocably make, constitute, appoint and authorize with full powers of substitution,**
COUNTRYWIDE HOME LOANS, INC.

**("Lender"), its successors, assigns or designees as my agent and attorney-in-fact,** in my name, place and stead in any way which I could do, if I were personally present, with full power of substitution and delegation, (1) to complete, execute and deliver, in my name or Lender's name, any and all forms, certificates, assignments, designations or other documentation as may be necessary or proper to carry out the terms and provisions of the Security Instrument executed by the undersigned in favor of Lender, (2) to complete, execute and deliver, in my name or in Lender's name, any and all forms, certificates, assignments, designations or other documentation as may be necessary or proper to make application for and obtain the Certificate of Title for the manufactured home designated above, and to have Lender, or its designee, designated as lienholder on the Certificate of Title for the manufactured home, (3) to complete, execute and deliver in my name or Lender's name, any and all forms, certificates, assignments, designations or other documentation as may be necessary or proper to have the manufactured home treated as real estate for any and all purposes under state law, including but not limited to the surrender of any Certificate of Title, any election to [Unofficial Document] nufactured home as real estate for tax purposes or to meet any other requirements in order for the loan/financing secured by the manufactured home and real estate described in Exhibit A to be eligible for sale to the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Association ("Freddie Mac") or any other secondary market purchaser, (4) to receive, complete, execute or endorse, and deliver in my name or Lender's name any and all claim forms, agreements, assignments, releases, checks, drafts or other instruments and vehicles for the payment of money, relating to any insurance covering the manufactured home, the indebtedness secured by the manufactured home or the Real Property, and (5) to complete, sign and file, without my signature, such financing and continuation statements, amendments, and supplements thereto, mortgages, deeds of trust and other documents which may from time to time be deemed necessary to perfect, preserve and protect Lender's security interest in the Real Property, the manufactured home, and any other property sold with it. I acknowledge that at the time this Power of Attorney and my Security Instrument and any of the forms, certificates, assignments, designations or other documentation are prepared the serial number for the manufactured housing unit may not be available. The manufactured housing unit may be a factory order in the process of being constructed. Immediately, upon receipt of the serial number, I understand and agree that the above items may be completed and corrected to properly disclose all the applicable home identifications, including the serial number. I understand that I will be provided with a copy of any corrected document.

**LOAN #: 126173117**

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy or facsimile of this instrument may act hereunder, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third party from and against any and all claims that may arise against such third party by reason of such third party having relied on the provisions of this instrument. I have given this Power of Attorney in connection with a loan/financing to be given by Lender and to induce Lender to make the financing available. It is coupled with an interest in the transaction and is irrevocable. This Power of Attorney shall not be affected by my subsequent incapacity, disability, or incompetence. I do further grant unto said Attorney-in-Fact full authority and power to do and perform any and all acts necessary or incident to the execution of the powers herein expressly granted, as fully as I might or could do if personally present.

WITNESS my hand and seal this _____ 14 _____ day of _____ February _____ ,
_____ 2006 _____

_____          _____
Borrower                            Witness

Unofficial Document

_____          _____
Printed Name                        Witness

_____          _____
Borrower                            Witness

_____          _____
Printed Name                        Witness

• Manufactured Home Limited Power of Attorney
1E226-US  CHL (05/05)                    Page 3 of 4

20060292746

LOAN #: 126173117

STATE OF *Arizona* )
)ss.
COUNTY OF *Maricopa* )

I, *Barbara Anne Pullman*, a Notary Public of the aforesaid County and State, do hereby certify that *Julie Vanter* personally appeared before me this day and acknowledge the due execution of the foregoing instrument.

WITNESS my hand and official stamp or seal, this _____ *14* _____ day of *February 2006*

_____
(Official Seal)

```
OFFICIAL SEAL
BARBARA ANNE PULLMAN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 15, 2009
```

NOTARY PUBLIC, State of *Arizona*

Unofficial Document

My Commission Expires: *9/15/09*

• Manufactured Home Limited Power of Attorney
1E226-US  CHL (05/05)                    Page 4 of 4

# AFFIXATION AFFIDAVIT
# MANUFACTURED HOME

**Return To:**
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

**Prepared By:**
KATIE PARISH

Unofficial Document

00012617311702006
[Doc ID #]

THE STATE OF

COUNTY OF

Section: _____   Block: _____   Lot: _____   Unit: _____

- Affixation Affidavit Manufactured Home
1E227-XX (11/05)(d)                    Page 1 of 5





DOC ID #: 00012617311702006

BEFORE ME, the undersigned authority, on this day personally appeared
JULIE VAWTER

("Borrower"), known to me to be the person(s) whose name(s) is/are subscribed below, and who, being by me first duly sworn, did each on his or her oath state as follows:

1)  The manufactured home located on the following described property located
    20145 E HAPPY RD, QUEEN CREEK, AZ 85242-8444
    in MARICOPA                                          County, ("Property Address") is
    permanently affixed to a foundation, is made a part of the land and will assume the characteristics
    of site-built housing.

2)  The manufactured home is described as follows:

    _Used_            _Cavco Skyline Homes_            _Unk_
    New/Used             Manufacturer's Name              Manufacturer's Name and Model No.

    _7073-0171-XA/B-R/C_    24'x64'                    Attach Legal Description
    Manufacturer's Serial No.      Length/Width

3)  The wheels, axles, towbar or hitch were removed when the manufactured home was placed and
    anchored on its permanent foundation, and the manufactured home was constructed in accordance
    with applicable state and local building codes and manufacturer's specifications in a manner
    sufficient to validate any applicable manufacturer's warranty.

4)  All foundations, both perimeter and piers, for the manufactured home have footings that are located
    below the frost line and the foundation system for the manufactured home was designed by an
    engineer to meet the soil conditions of the Property Address.

5)  If piers are used for the manufactured home, they have been provided.

6)  If state law so requires, anchors for the manufactured home have been provided.

7)  The foundation system of the manufactured home meets applicable state installation requirements
    and all permits required by governmental authorities have been obtained.

8)  The manufactured home is permanently connected to appropriate residential utilities such as
    electricity, water, sewer and natural gas.

9)  The financing transaction is intended to create a first lien in favor of Lender. No other lien or
    financing affects the manufactured home, other than those disclosed in writing to Lender.

10) The manufactured home was built in compliance with the federal Manufactured Home Construction
    and Safety Standards Act.

11) The undersigned acknowledge his or her intent that the manufactured home will be an immovable
    fixture, a permanent improvement to the land and a part of the real property securing the Security
    Instrument.

● Affixation Affidavit Manufactured Home
1E227-XX (11/05)                          Page 2 of 5

DOC ID #: 0001261731170 2006

12) The manufactured home will be assessed and taxed by the applicable taxing jurisdiction as real estate.

13) The borrower is the owner of the land and any conveyance or financing of the manufactured home and the land shall be a single real estate transaction under applicable state law.

Borrower(s) certifies that Borrower(s) is in receipt of (a) the manufacturer's recommended carpet maintenance program (if required by Lender), (b) any manufacturer's warranties that are still in effect and cover the heating/cooling systems, water heater, range, etc., and (c) the formaldehyde health notice. This affidavit is being executed pursuant to applicable state law.

_____
Witness

_____
Witness

_____
JULIE VAWTER         Unofficial Document            (Borrower)
                                                    (Date)
20445 EAST HAPPY ROAD, QUEEN CREEK, AZ 85242

_____
                                                    (Borrower)
                                                    (Date)

_____
                                                    (Borrower)
                                                    (Date)

_____
                                                    (Borrower)
                                                    (Date)

[Acknowledgment on Following Pages]

• Affixation Affidavit Manufactured Home
1E227-XX (11/05)                    Page 3 of 5

20060292746

DOC ID #: 00012617311702006

## BORROWER ACKNOWLEDGMENT

State of Arizona                    §
                                   §
County of Maricopa                  §
This instrument was acknowledged before me on Febuary 14 2006
by Julie Vauter

~~Barbara Anne Pullman~~
(Signature of notarial officer)

(Seal, if any)

```
OFFICIAL SEAL
BARBARA ANNE PULLMAN
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Sept. 15, 2009
```

Title (and Rank)

Unofficial Document
My commission expires: 9/15/09

• Affixation Affidavit Manufactured Home
1E227-XX (11/05)                    Page 4 of 5

DOC ID #: 0001261731170 2006

## LENDER ACKNOWLEDGMENT

**Lender's Statement of Intent:**

The undersigned Lender intends that the manufactured home be an immovable fixture and a permanent improvement to the land.

LENDER:

By: _____

Its: _____ Denise Saldana, A.V.P

State of _A Z_

§
§
§

County of _Maricopa_

This instrument was acknowledged before me on _____ 2/13/06 _____ [date],

by _____ Denise Saldana [name of agent],
A.V.P [title of agent] of
_____ [name of entity acknowledging],

Unofficial Document

a _____ [state and type of entity], on behalf of _____
_____ [name of entity acknowledging].

(Seal)

OFFICIAL SEAL
LESLIE EDIDIN
NOTARY PUBLIC – ARIZONA
MARICOPA COUNTY
My Comm. Expires 11-26-2006

_____
Signature of Notarial Officer

_____
Title of Notarial Officer
My commission expires:

• Affixation Affidavit Manufactured Home
1E227-XX (11/05)

Page 5 of 5

20060292746

## Legal Description

## Exhibit "A"

The Northeast quarter of the Southwest quarter of the Southwest quarter of section 33, Township 2 south, range 7 east of the Gila and Salt River base and Meridian, Maricopa County, Arizona:

Except the South 340 feet thereof;

Except the West 479, 61 feet thereof.

**File Number**
06AZ00450

Unofficial Document

# Exhibit B

OFFICIAL RECORDS OF

**Unofficial Document**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
BAC Home Loans Servicing, LP
400 National way
SIMI VALLEY, CA  93065

TS No. 11-0040253
**TITLE ORDER#:  110245562AZGTI**

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST ARIZONA

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND
TRANSFERS TO:

**THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,NOT IN ITS
INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE BENEFIT OF THE
CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES,
SERIES 2006-10**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 02/14/2006,
EXECUTED BY:  JULIE VAWTER, AN UNMARRIED WOMAN,TRUSTOR: TO FIDELITY
NATIONAL TITLE INSURANCE COMPANY, TRUSTEE AND RECORDED AS INSTRUMENT
NO. 2006-0292746 ON 03/03/2006, IN BOOK N/A, PAGE N/A, OF OFFICIAL RECORDS IN THE
COUNTY RECORDER'S OFFICE OF MARICOPA COUNTY, IN THE STATE OF ARIZONA.

**SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION**

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE
MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS
ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: 5/31/11          MORTGAGE ELECTRONIC REGISTRATION
                        SYSTEMS, INC.

State of: _____Texas_____ )    BY: _____ 5/31/11
County of: _____Tarrant_____ )        **D.R. Couch**
                                          , Assistant Secretary

On __5-31-11__ before me __Kanetta Denise Edwards__, personally
appeared __D.R. Couch     Assistant Secretary__, know to me (or proved to me on the
oath of _____ or through __TXDL__ ) to be the person whose name is subscribed
to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes
and consideration therein expressed.
Witness my hand and official seal.

_____
Notary Public's Signature

KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

*Form azasgn (01/02)*

TS # 11-0040253
PUB# 4009217
LOAN TYPE: CONV

# "EXHIBIT A"

## LEGAL DESCRIPTION

THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF THE
SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 2 SOUTH, RANGE 7 EAST OF
THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY,
ARIZONA: EXCEPT THE SOUTH 340 FEET THEREOF; EXCEPT THE WEST 479,61
FEET THEREOF.

Unofficial Document

*Form legaldesc (07/01)*

Exhibit C

OFFICIAL RECORDS OF

**Unofficial Document**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082
WHEN RECORDED MAIL TO:
  BAC HOME LOANS SERVICING, LP
  400 National way
  SIMI VALLEY, CA  93065
  Attn: FORECLOSURE DEPT
TS No.  11-0040253
Title Order No.  110245562AZGTI
APN No.  304-91-039L2

## SUBSTITUTION OF TRUSTEE ARIZONA

The undersigned beneficiary hereby appoints RECONTRUST COMPANY, N.A. 2380 Performance Dr, TX2-985-07-03 Richardson, TX  75082, SUCCESSOR TRUSTEE under the deed of trust executed by JULIE VAWTER, AN UNMARRIED WOMAN, as trustor(s), in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., is named beneficiary, and FIDELITY NATIONAL TITLE INSURANCE COMPANY, as original trustee, and Recorded on 03/03/2006, in Maricopa County; Arizona, as Instrument Number 2006-0292746, Book N/A, Page N/A, and legally describing the trust property as

SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION

RECONTRUST COMPANY, N.A. HAS BEEN APPOINTED AS SUCCESSOR TRUSTEE. RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5., BECAUSE IT IS A NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY("OCC")

DATED: 05/31/2011

THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK,NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-10BY BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING LP,ITS GENERAL PARTNER, AS A.I.F. *BY BAC GP LLC

5/31/11

David M Gregory        Assistant Vice President

State of:  _____Texas_____  )
County of:  _____Tarrant_____  )

On _5-31-11_ before me _Kanetta Denise Edwards_, personally appeared **David M Gregory** _AVP_, know to me (or proved to me on the oath of _____ or through _TXDL_ ) to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed. Witness my hand and official seal.

KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

*Form azsub (08/06)*

TS # 11-0040253
PUB# 4009217
LOAN TYPE: CONV

# "EXHIBIT A"

## LEGAL DESCRIPTION

THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF THE
SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 2 SOUTH, RANGE 7 EAST OF
THE GILA AND SALT RIVER BASE AND MERIDIAN,  MARICOPA COUNTY,
ARIZONA: EXCEPT THE SOUTH 340 FEET THEREOF; EXCEPT THE WEST 479,61
FEET THEREOF.

Unofficial Document

Exhibit D

OFFICIAL RECORDS OF

**Unofficial**

**Document**

RECORDING REQUESTED BY:
RECONTRUST COMPANY, N.A.
2380 Performance Dr, TX2-985-07-03
Richardson, TX  75082
WHEN RECORDED MAIL TO:
BAC HOME LOANS SERVICING, LP
400 National way
SIMI VALLEY, CA  93065
Attn: FORECLOSURE DEPT
TS No.  11-0040253
Title Order No. 110245562AZGTI
APN No. 304-91-039L2

## NOTICE OF TRUSTEE'S SALE ARIZONA

The following legally described trust property will be sold, pursuant to the power of sale under that certain Deed of Trust Recorded on 03/03/2006, as Instrument Number 2006-0292746, Book N/A, Page N/A, in the records of Maricopa County, Arizona, at public auction to the highest bidder: In the Courtyard, by the main entrance of the Superior Court Building, 201 West Jefferson, Phoenix, AZ 85003  on 09/06/2011 at 10:00 AM of said day.

SEE ATTACHED EXHIBIT A - LEGAL DESCRIPTION.  APN No. 304-91-039L2

The Deed of Trust and/or Beneficiary provide the following purported property location:
20145 E HAPPY RD, QUEEN CREEK, Maricopa County, AZ 85242-8444

Said sale will be made for cash (payable at time of sale), but without covenant or warranty, express or implied, regarding title, possession or encumbrances , to pay the remaining principal sum of the note secured by said Deed of Trust, which includes interest thereon as provided in said note, advances, if any under the terms of said Deed of Trust, interest on advances, if any, fees, charges and expenses of the Trustee and of the trust created by said Deed of Trust. The original sum of the note is $164,500.00. Trustee will accept only cash or cashier's check for reinstatement or price bid payment.  Reinstatement payment must be paid before five o'clock P.M on the last day other than a Saturday or legal holiday before the date of the sale.  The Purchaser at the sale, other than the beneficiary to the extent of his credit bid, shall pay the price no later than five o'clock P.M. of the following day, other than a Saturday or legal holiday.

Name and Address of Original Trustor:  JULIE VAWTER, 20145 E HAPPY RD, QUEEN CREEK, AZ 85242-8444
Name and Address of Current Trustee:  RECONTRUST COMPANY, N.A., 2380 Performance Dr, TX2-985-07-03 Richardson, TX  75082 FOR INFORMATION/SALE INFORMATION CALL:  (800) 281-8219

Name and Address of Current Beneficiary:  BANK OF NEW YORK, 400 National way, SIMI VALLEY, CA 93065 PHONE: (800) 669-6650

RECONTRUST COMPANY, N.A. IS THE CURRENT TRUSTEE.  RECONTRUST COMPANY, N.A. QUALIFIES AS A TRUSTEE OF THE TRUST DEED UNDER ARIZONA REVISED STATUTES SECTION 33-803, SUBSECTION A. 5., BECAUSE IT IS A NATIONAL ASSOCIATION REGULATED BY THE OFFICE OF THE COMPTROLLER OF THE CURRENCY("OCC")

*Form aznos (05/08)*

DATED: May 31, 2011

RECONTRUST COMPANY, N.A.
As Trustee

State of: _____ **Texas** _____ )        BY:  5/31/11

County of: _____ **Tarrant** _____ )      Darla Sproles, Authorized Signer

On **5·31·11** before me Kenetha Denise Edwards , personally appeared
_____ Darla Sproles _____ Authorized Signer , know to me (or proved to me on the oath of
_____ or through _____ TXDL _____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she executed the same for the purposes and
consideration therein expressed.

Witness my hand and official seal.                    Unofficial Document

_____
Notary Public's Signature

KANETTA DENISE EDWARDS
Notary Public
State of Texas
My Comm. Expires 4-19-2014

THIS FIRM IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL
BE USED FOR THAT PURPOSE. THE DEBT SET FORTH ON THIS NOTICE WILL BE
ASSUMED TO BE VALID UNLESS YOU DISPUTE THE DEBT BY PROVIDING THIS OFFICE
WITH A WRITTEN NOTICE OF YOUR DISPUTE WITHIN 30 DAYS OF YOUR RECEIPT OF
THIS NOTICE, SETTING FORTH THE BASIS OF YOUR DISPUTE. IF YOU DISPUTE THE
DEBT IN WRITING WITHIN 30 DAYS, WE WILL OBTAIN AND MAIL VERIFICATION OF THE
DEBT TO YOU. IF THE CREDITOR IDENTIFIED IN THIS NOTICE IS DIFFERENT THAN
YOUR ORIGINAL CREDITOR, WE WILL PROVIDE YOU WITH THE NAME AND ADDRESS
OF THE ORIGINAL CREDITOR IF YOU REQUEST THIS INFORMATION IN WRITING WITHIN
30 DAYS.

TS # 11-0040253
PUB# 4009217
LOAN TYPE: CONV

# "EXHIBIT A"

## LEGAL DESCRIPTION

THE NORTHEAST QUARTER OF THE SOUTHWEST QUARTER OF THE
SOUTHWEST QUARTER OF SECTION 33, TOWNSHIP 2 SOUTH, RANGE 7 EAST OF
THE GILA AND SALT RIVER BASE AND MERIDIAN, MARICOPA COUNTY,
ARIZONA: EXCEPT THE SOUTH 340 FEET THEREOF; EXCEPT THE WEST 479,61
FEET THEREOF.

Unofficial Document

*Form legaldesc (07/01)*